IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| FRATERNAL ORDER OF POLICE METRO TRANSIT POLICE LABOR COMMITTEE, INC., 711 4th St. NW Washington DC 20001 | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY (WMATA) 600 5th St. NW Washington DC 20001 | ) ) ) ) ) ) ) ) ) ) | |
| Defendant. | ) | |

## **COMPLAINT**

Plaintiff, Fraternal Order of Police Metro Transit Police Labor Committee, Inc. ("FOP" or "Union"), by and through its undersigned counsel, hereby files this Complaint against Defendants, Washington Metropolitan Area Transit Authority ("WMATA"). This is an action seeking an order to compel Defendant to comply with a final and binding arbitration award.

## **PARTIES**

1. The Union is the certified and recognized representative of a collective bargaining unit of all regular, full-time, sworn, police officers and candidates, but excluding all officers having supervisory authority and/or excluded pursuant to Section 66(b) of

Public Law 92-349. See Exhibit A to the Complaint, 2010-2017 Agreement between WMATA and FOP/MTPLC, at Article 1, Sections 1 and 2(d).

2. The Union maintains its principal office at 711 Fourth St., NW, Washington, D.C. 20001.

3. Defendant is a multi-jurisdictional entity created and governed by the Washington Metropolitan Area Transit Compact, as amended, (the "Compact"). Va. Ann. Sec. 56-529. The Compact is attached hereto as Exhibit B to the Complaint.

4. WMATA maintains its principal office at 600 Fifth St., NW, Washington, D.C. 20001.

5. References herein to WMATA are also references to any of its sub-divisions or departments, including the Metro Transit Police Department (MTPD). For purposes of this action, WMATA and MTPD are interchangeable.

**JURISDICTION & VENUE**

6. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. §1331.

7. The Compact has been consented to by federal legislation at 92 P.L. 349. (Other Public Laws have referenced Congress's consent to the Compact; 92 P.L. 349 is the specific Act referred to in the collective bargaining agreement.)

8. Section 81 of the Compact explicitly confers jurisdiction upon the United States District Courts for this type of action.

9. This Court has personal jurisdiction over the Defendant because WMATA owns numerous properties within the geographic jurisdiction of this Court, and conducts

substantial amounts of business within the geographic jurisdiction of this Court. Specifically, WMATA operates at least twenty rail stations and numerous bus garages in the geographic jurisdiction of this Court and this Division. WMATA's Metro Transit Police Department ("MTPD") maintains a police station in the geographic jurisdiction of this Court.

10. Venue is appropriate in this Court for the same reasons that this Court has personal jurisdiction over the Defendant.

## FACTS

## The Parties' Collective Bargaining Relationship

11. At all times relevant to these proceedings, the parties were bound by the terms of a collective bargaining agreement attached hereto as Exhibit A to the Complaint. It will hereinafter be referred to as the "2010-2017 CBA." Although that collective bargaining lists an expiration date of September 2017, its terms stated that it would continue in force until a successor agreement is executed. At the time of Reefer's termination and through the parties' arbitration of the matter, the parties had not yet reached agreement on a successor collective bargaining agreement, thus leaving the 2010 CBA in full force and effect.

12. In June 2020, the parties finally signed a new CBA retroactive to be contiguous with the 2010. That CBA is attached hereto as Exhibit C to the Complaint. It will be hereinafter referred to as the "2017-2024 CBA".

**MTPD Officer Anthony Reefer**

13. Anthony Reefer was an MTPD Officer from 2004 until October 2018.

14. In October 2018, Defendant terminated the employment of MTPD Officer Anthony Reefer.

15. The termination stemmed from a July 20, 2018, interaction Reefer had with a man, T▮▮▮▮▮▮ S▮▮▮▮▮, at a WMATA rail station where Reefer was assigned to patrol.

16. Semere subsequently submitted an online complaint to WMATA, the entirety of which stated, verbatim, "On July 20 Officer reefer/raeford unlawfully stop me T▮▮▮▮▮▮ S▮▮▮▮▮ aka Ted by harassing be and trying to touch me and following me. He then illegally went through my bag and stole my iPad Pro."

17. The MTPD's Office of Professional Responsibilities & Inspections (OPRI) conducted an internal investigation of Semere's allegation.

18. The MTPD OPRI determined that the allegation of the stolen iPad was unfounded.

19. While investigating the stolen iPad allegation, MTPD OPRI investigators reviewed footage from the rail station surveillance camera.

20. Although the iPad allegation was false, the MTPD OPRI investigators believed the surveillance footage evidenced other crimes committed by Reefer.

21. MTPD referred the matter to the Prince George's County State's Attorney's office.

22. The Prince George's County State's Attorney indicted Reefer for "Second Degree Assault and Misconduct in Office."

23. While that indictment was pending, MTPD terminated Reefer because "Officer Reefer's actions on July 20, 2018, resulted in an indictment," because the "indictment has brought discredit to the Metro Transit Police Department," and because "Officer

Reefer's indictment clearly exemplifies his failure to obey the laws he swore to enforce and obey."

24. MTPD never cited any other basis for Reefer's 2018 termination.

25. The Union filed a timely grievance in objection to Reefer's termination.

26. The parties proceeded through the contractual grievance procedure and were unable to resolve the matter short of arbitration.

27. The parties appointed a Board of Arbitration chaired by neutral member Andrew Strongin.

28. Between the time of the termination and the arbitration hearing in the matter, the indictment was dismissed in its entirety.

## The Arbitration Proceeding

29. The Board of Arbitration conducted an evidentiary hearing in October 2019.

30. Each party submitted post-hearing briefs in the matter.

31. In May 2020, the Board issued a decision stating in relevant part, "The grievance is sustained in full. Grievant should be reinstated to employment and his former position and made whole for his losses." A copy of the Board of Arbitration's decision is attached hereto as Exhibit D to the Complaint.

32. Finding MTPD's stated bases for termination to be unsupported, the Board stated, "…once the indictment was dismissed, [the administrative charges against Reefer] were left unsupported, and like the indictment, must be dismissed. See Exhibit D, at page 12 of the Award.

33. The Board's decision means that the termination was itself defective and that all consequences arising therefrom were the fruits of that poisonous tree.

34. The Board's decision effectively means that the 2018 revocation (at MTPD's request) of Reefer's Maryland certification was in error because the termination itself was defective

## Post-Arbitration & Maryland Commission

35. Subsequent to the arbitration award, MTPD conducted a background investigation on Reefer and eventually put him on paid status on or around May 22, 2020.

36. At that time, MTPD assigned Reefer to non-law enforcement duties.

37. MTPD sometimes takes the position that all its officers are required to be qualified to work as law enforcement officers in Virginia, DC, and Maryland.

38. This Court, in FOP Metro Transit Police Labor Committee, Inc. v. WMATA, 2013 U.S. Dist. LEXIS 87059 (Brinkema, J.), held, at *29-30, that the WMATA Compact "does not require each police officer to be certified in each jurisdiction" and that WMATA's "unwritten practice of requiring all MTPD officers to be licensed in all three jurisdictions…does not justify disregarding WMATA's clear obligation under both its collective bargaining agreement with the plaintiff and its own Compact to honor legitimate arbitration decisions." A copy of that decision is attached hereto as Exhibit E to the Complaint and will hereinafter be referred to as the 2013 District Court decision.

39. Although the Court of Appeals for the Fourth Circuit reversed the District Court's 2013 decision, it reversed on other grounds and did not indicate that the above finding by the District Court was erroneous.

40. In Maryland, the Maryland Police Training Commission (hereinafter "Maryland Commission") is charged with certifying law enforcement officers to operate in Maryland.

41. On information and belief, the MTPD informed the Maryland Commission shortly after the November 2018 improper termination that the MTPD no longer employed Reefer and his Maryland certification should be deemed revoked in the Commission's records.

42. On or around September 2, 2020, MTPD submitted a completed "Application for Police Certification" form to the Maryland Commission. A copy of that submitted form is attached hereto as Exhibit F to the Complaint.

43. Section 13 of the form asks for "A brief explanation of the circumstances surrounding the departure of the applicant from a previous agency."

44. MTPD stated in Section 13 of the form, "Applicant was indicated [sic] for assault/misconduct 7/20/18. IA investigation sustained multiple charges and terminated applicant. Arbitration Board ordered reinstated 5/12/20."

45. MTPD did not explain in that form that the indictment had been dropped.

46. MTPD did not explain in that form that Board of Arbitration found an absolute lack of basis for MTPD's termination.

47. The way in which MTPD filled out that form was an effort to evade the final and binding effect of the arbitration.

48. MTPD failed to comply with the Board's Award when it did not take the steps reasonably necessary to, as per the Award, "return him to his former position."

49. MTPD's actions are significant because the Maryland Commission gives great deference to the statements and requests of the employing/petitioning agencies.

50. On September 8, 2020, the Maryland Commission's Executive Director Albert Liebno, Jr., denied the application for Reefer's certification. A copy of the Commission's letter of denial is attached hereto as Exhibit G to the Complaint.

51. The Maryland Commission's letter stated, "Upon preliminary review, I have determined that the [Application for Certification] should not be processed at this time…You may request a waiver of selection standards for the recertification of Anthony A. Reefer which will be presented to the Police Training and Standards Commission at their January 2021 meeting. At the meeting, the members will determine whether or not certification can be granted. If you choose to request a waiver to pursue certification, please indicate such in a correspondence to me no later than December 7, 2020."

52. If MTPD takes the position that Maryland certification is required for Reefer to maintain his employment, then it should have, to comply with the Award, made clear to the Commission that the Board of Arbitration found that Reefer was not guilty of any of the misconduct of which MTPD accused him of in 2018.

53. In at least one prior MTPD case, the Commission granted re-certification to an MTPD Officer, Nopadon McKee, who had been found by a Board of Arbitration to be dishonest.

54. In the McKee matter, MTPD took the steps necessary to secure his recertification from the Commission.

55. The contrast between the McKee case and the Reefer case is even more stark given that the Board of Arbitration completely exonerated Reefer from any wrongdoing; McKee was found by the Board of Arbitration to have been guilty of dishonesty in his official duties.

56. On October 5, 2020, MTPD again terminated Reefer from employment. A copy of the termination letter is attached hereto as Exhibit H to the Complaint.

57. As shown in Exhibit H, MTPD's only basis for refusing to employ Reefer is his lack of a certification in Maryland. That termination is simply a result of MTPD's failure to comply with the clear terms of the Award as well as its failure to comply in good faith with the intent of the Award.

## COUNT I
## BREACH OF THE COLLECTIVE BARGAINING AGREEMENT

58. All statements and allegations set forth above are incorporated herein as if fully re-stated.

59. Defendant's 2018 termination of Reefer's employment was a violation of the collective bargaining agreement.

60. The May 2020 Award by the Board of Arbitration was final and binding as per the terms of collective bargaining agreement.

61. The Board of Arbitration's decision confirms that Defendant's 2018 termination of Reefer was a violation of the collective bargaining agreement.

62. Defendant's October 2020 re-termination of Reefer was an extension of its refusal to abide by the terms of the Board of Arbitration's May 2020 decision.

63. Given that the Board of Arbitration has issued a ruling that is, according to the collective bargaining agreement "final and binding" there is no other avenue to enforce those decisions other than in this Court.

## COUNT II
## BREACH OF THE WMATA COMPACT

64. All statements and allegations set forth above are incorporated herein as if fully restated.

65. Defendant's refusal to comply with the arbitration decision is a violation of Section 66(c) of the Compact, which states that the arbitration process used in the Reefer case is final and binding on both parties.

66. The Plaintiff has exhausted all procedures available to it in the collective bargaining agreement to resolve this dispute.

67. WMATA has acted in disregard of the law, embodied in the WMATA Compact, of the United States, the District of Columbia, the Commonwealth of Virginia, and the State of Maryland by refusing to comply with the binding arbitration process required by the Compact.

**WHEREFORE**, Plaintiff respectfully requests that the Court grant the following relief:

1. Order WMATA/MTPD to reinstate Anthony Reefer to the position of Police Officer, effective immediately in accordance with the Board of Arbitration's decision.

2. Order WMATA/MTPD to further comply with the terms of the Arbitration Award by either:

    a. Allowing Reefer to work as an MTPD Police Officer without a Maryland law enforcement certification; or

    b. File paperwork with the Maryland Police Training Commission no later than December 7, 2020, signed by the MTPD Chief of Police, indicating:

        i. Reefer was not responsible for the loss of his Maryland certification in 2018;

        ii. Reefer has not engaged in any misconduct that would have resulted in his loss of Maryland certification;

        iii. The forfeiture of Reefer's certification was the result of MTPD's error;

        iv. That to the extent any waiver of selection standards is necessary that MTPD requests such a waiver for Reefer.

3. Order WMATA to compensate Reefer for collectively bargained wages and benefits he would have earned from October 5, 2020, until the date WMATA actually complies and reinstates him to his position and allows him to earn those wages and benefits.

4. Pay the Union's litigation costs incurred in enforcing the arbitration award.

5. Pay the Union's reasonable attorneys' fees incurred in this litigation.

6. Order any additional remedies the Court finds just and proper.

Respectfully submitted,

Dated: _10/15/20__

*/s/ Justin P. Keating*

Justin P. Keating (VA Bar #75880)
Rodney W. Harrell (VA Bar No. 92274)
BEINS, AXELROD, P.C.
1717 K St. St.
Suite 1120
Washington DC 20006

- 12 -

202.595.1941
202.328.7030 (Fax)
jkeating@beinsaxelrod.com


**COUNSEL FOR PLAINTIFF
FRATERNAL ORDER OF POLICE
METRO TRANSIT POLICE
LABOR COMMITTEE, INC.**